BETSY C. MANIFOLD (182450)
manifold@whafh.com
FERDEZA ZEKIRI (335507)
zekiri@whafh.com
**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599

*Attorneys for Plaintiff*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY BRINK, Derivatively on Behalf of Nominal Defendant BEYOND MEAT, INC., ) ) ) ) | CASE NO.: |
| Plaintiff, ) ) ) | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. ) ) ) | |
| ETHAN WALDEN BROWN, SETH GOLDMAN, SALLY GRIMES, RAYMOND LANE, MUKTESH PANT, NED SEGAL, KATHY WALLER, MARK J. NELSON, AND PHILLIP E. HARDIN, ) ) ) ) ) ) ) ) | |
| Defendants, ) ) ) | **JURY TRIAL DEMANDED** |
| BEYOND MEAT, INC., ) ) | |
| Nominal Defendant. ) ) | |

Plaintiff Kimberly Brink ("Plaintiff"), by her undersigned attorneys, derivatively and on behalf of Nominal Defendant Beyond Meat, Inc. ("Beyond Meat" or the "Company"), file this Shareholder Derivative Complaint for breaches of their fiduciary duties, unjust enrichment, gross mismanagement, and violations of Sections 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Beyond Meat's employees, directors, and officers from May 5, 2020 through October 13, 2022 (the "Relevant Period") based Defendants (defined below) making materially false and misleading statements about the Company's business operations and prospects as set forth herein.

2.      The Company is a provider of plant-based meat products, including beef, pork, and poultry substitutes.  The Company's most popular offering is the Beyond Burger, a plant-based burger sold in thousands of grocery stores and restaurants internationally.

3.      During the Relevant Period, the Company misled shareholders by exaggerating the success of its product tests with its large-scale partnerships, including prominent food brands such as McDonalds, Starbucks, KFC, Pizza Hut, and Taco Bell.  The Company assured its shareholders that it could "ensure manufacturability" through "extensive testing," and that the Company could manufacture its plant-based meat products at a commercial scale specified by its partners.  The Company also blamed what delays they had in launching their large-scale partnerships on the Covid-19 pandemic.

4.      In the meantime, certain of the Company's executives profited by selling hundreds of thousands of shares of their personally held Company stock at artificially inflated prices during the Relevant Period.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

2

**JURISDICTION AND VENUE**

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

7.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

8.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation or limited liability company doing business in California, or he or she is an individual who has minimum contacts with California to justify the exercise of jurisdiction over them.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

10.     Venue is proper in this District because Beyond Meat and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

**PARTIES**

**Plaintiff**

11.     Plaintiff is a current shareholder of the Company's common stock and has continuously held the common stock at all relevant times.  Plaintiff purchased her shares of Company stock on May 6, 2019, August 5 and 6, 2019, and November 8, 2019.

**Nominal Defendant Beyond Meat**

12.     Beyond Meat is a Delaware corporation with its principal executive offices located at 119 Standard Street, El Segundo, California 90245.

**Director Defendants**

13.     ***Defendant Ethan Walden Brown*** ("Brown") is the founder of the Company and has served as the Company's President, Chief Executive Officer ("CEO"), and director since 2009.

14.     ***Defendant Seth Goldman*** ("Goldman") has served as Chair of the Board since 2020.  Defendant Goldman previously served as Executive Chair from October 2015 until February 2020.  Defendant Goldman also serves as a member of the Nominating and Corporate Governance Committee. For the fiscal year ended December 31, 2022, Defendant Goldman received $135,907 in total compensation made up of $67,500 in fees earned or cash paid and $68,407 in stock awards.  For the fiscal year ended December 31, 2021, Defendant Goldman received $154,900 in total compensation. This included $67,500 in fees earned or paid in cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Goldman received $235,738 in total compensation. This included $56,378 in fees earned or paid in cash, $138,939 in stock awards, and $40,421 in all other compensation.

15.     ***Defendant Sally Grimes*** ("Grimes") has served as a director since May 2021. Defendant Grimes also serves as Chairperson of the Nominating and Corporate Governance Committee and a member of the Risk Committee. For the fiscal year ended December 31, 2022, Defendant Grimes received $111,539 in total compensation. This included, $43,132 in fees earned or paid in cash, and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Grimes received $276,573 in total compensation. This included, $29,934 in fees earned or paid in cash, and $249,639 in stock awards.

16.   **_Defendant Raymond J. Lane_** ("Lane") has served as a director since February 2015 and also serves, and has served, as a member of the Compensation Committee since at least 2019.  For the fiscal year ended December 31, 2022, Defendant Lane received $121,407 in total compensation from the Company. This included $53,000 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Lane received $134,900 in total compensation. This included $47,500 in fees earned or paid in cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Lane received $191,939 in total compensation. This included $53,000 in fees earned or paid in cash, and $138,939 in stock awards.

17.   **_Defendant Muktesh "Micky" Pant_** ("Pant") has served as a director since May 2021.  Defendant Pant also serves as Chairperson of the Human Capital Management and Compensation Committee and a member of the Nominating and Corporate Governance Committee.  For the fiscal year ended December 31, 2022, Defendant Pant received $121,407 in total compensation. This included $53,000 in fees earned or paid in cash, and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Pant received $282,837 in total compensation. This included $33,198 in fees earned or paid in cash and $249,639 in stock awards.

18.   **_Defendant Ned Segal_** ("Segal") has served as a director since November 2018, and also serves as a member of the Audit Committee since at least 2019.  For the fiscal year ended December 31, 2022, Defendant Segal received $115,907 in total compensation. This included $47,500 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Segal received $134,900 in total compensation from Beyond Meat. This included $47,500 in fees earned or paid in cash and $87,400 in stock awards.  For the fiscal year ended December 31, 2020, Defendant Segal received $186,439 in

total compensation from Beyond Meat. This included $47,500 in fees earned or paid in cash, and $138,939 in stock awards.

19.     **Defendant Kathy N. Waller** ("Waller") has served as a director since November 2018, and has served as Chairperson of the Audit Committee and a member of the Human Capital Management and Compensation Committee since at least 2019.  For the fiscal year ended December 31, 2022, Defendant Waller received $130,907 in total compensation from the Company including, $62,500 in fees earned or paid in cash and $68,407 in stock awards. For the fiscal year ended December 31, 2021, Defendant Waller received $149,153 in total compensation from Beyond Meat. This included $61,753 in fees earned or paid in cash, and $87,400 in stock awards. For the fiscal year ended December 31, 2020, Defendant Waller received $199,439 in total compensation. This included $60,500 in fees earned or paid in cash and $138,939 in stock awards.

20.     Defendants Brown, Goldman, Grimes, Lane, Pant, Segal and Waller are collectively referred to herein as the "Director Defendants".

**Officer Defendants**

21.     **Defendant Mark J. Nelson** ("Nelson") served as Chief Financial Officer ("CFO") from May 2017 until May 2021 and as Treasurer from September 2018 until May 2021. After which Defendant Nelson served as a consultant until May 2023. Previously, he served as the Company's Chief Operating Officer from May 2017 through September 2018, and as Secretary from September 2018 through May 2019. On February 26, 2021, Defendant Nelson informed the Company of his intention to retire and did retire from employment with the Company effective May 5, 2021.

22.     **Defendant Phillips E. Hardin** ("Hardin") served as CFO and Treasurer from July 12, 2021 until October 2022.

23.     Defendant Nelson, Hardin and the Director Defendants are collectively referred to herein as the "Individual Defendants".

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers, directors, and/or fiduciaries of Beyond Meat and because of their ability to control the business and corporate affairs of Beyond Meat, the Individual Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally.

25.     Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

26.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

27.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

28.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations

as directors and officers of the Company, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and directors of the Company has been ratified by the remaining Individual Defendants who collectively comprised the Company's Board at all relevant times.

29.    As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange, the Individual Defendants, had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

30.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)    ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, California, and the United States, and pursuant to the Company's own Code of Conduct;

(b)    conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)    remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)    establish and maintain systematic and accurate records and reports of the business and internal affairs of the Company and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)    maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that the Company's operations would comply with all applicable laws and the Company's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)    exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)    refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)    examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

31.    Each of the Individual Defendants further owed to the Company and the shareholders the duty of loyalty requiring that each favor the Company's interest and that of its shareholders over their own while conducting the affairs of the

Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

32.     At all times relevant hereto, the Individual Defendants were the agents of each other and of the Company and were at all times acting within the course and scope of such agency.

33.     Because of their advisory, executive, managerial, and directorial positions with the Company, each of the Individual Defendants had access to adverse, non-public information about the Company.

34.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION BY THE INDIVIDUAL DEFENDANTS

35.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

36.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and waste of corporate assets.

37.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

10

misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants who are directors of the Company was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

38.   Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his or her overall contribution to and furtherance of the wrongdoing.

39.   At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of the Company and was at all times acting within the course and scope of such agency.

## BEYOND MEAT'S CODE OF CONDUCT

40.   The Code of Conduct states that the Company "expects all of its directors, executives, managers and other supervisory personnel to act with honesty and integrity."

41.   In a section entitled *Competition and Fair Dealing*, the Code of Conduct states:

> The Company strives to compete vigorously and to gain advantages over its competitors through superior business performance, not through unethical or illegal business practices. No employee may through improper means acquire proprietary information from others, possess trade secret information or induce disclosure of confidential

information from past or present employees of other companies. If an employee becomes aware of the improper acquisition of this type of information, the employee should report it immediately.

Employees are expected to deal fairly and honestly with anyone with whom they have contact in the course of performing their duties to the Company. The making of false or misleading statements about the Company's competitors is prohibited by this Code, inconsistent with the Company's reputation for integrity and harmful to the Company's business. Employees may not take unfair advantage of anyone through manipulation, concealment, abuse of privileged information, misuse of confidential information, misrepresentation of material facts or any other unfair business practice.

42.     In a section entitled *Confidentiality*, the Code of Conduct states:

Employees must not share confidential Company information, or any confidential information of a business partner, supplier or vendor with anyone who has not been authorized to receive it, except when disclosure is authorized or legally mandated. Unauthorized use or distribution of this information is extremely serious; it would violate the confidential information and invention assignment agreement or similar agreement (including consulting or contractor agreement) and it could be illegal and result in civil liability or criminal penalties. It would also violate the Company's trust in an employee, and the trust of a business partner, supplier or vendor in the Company.

43.     In a section entitled *Compliance Standards and Procedures*, the Code of Conduct states:

If an employee is aware of a suspected or actual violation of this Code by others, it is the employee's responsibility to report it. Employees and directors must make an immediate report of any suspected or actual violations (whether or not based on personal knowledge) of applicable law or regulations or the Anti-Corruption Policy.

44.     In violation of the Code of Conduct, the Individual Defendants conducted little oversight of the materially false and misleading statements and/or omissions, or the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements, and to facilitate and disguise the

Individual Defendants' violations of law, including breaches of fiduciary duty, gross mismanagement, and violations of the Exchange Act.

## **ADDITIONAL CORPORATE GOVERNANCE**

### **Audit Committee Charter**

45.     The Company maintains an Audit Committee Charter.  This Charter states:

> At least annually, obtain and review a report by the independent auditor describing: the firm's internal quality-control procedures; any material issues raised by the most recent internal quality-control review, or peer review, of the firm.  […]
>
> ***
>
> On behalf of the Board, oversee the principal risk exposures facing the Company and the Company's mitigation efforts in respect of such risks, including, but not limited to financial reporting risks and credit and liquidity risks.
>
> ***
>
> Meet with management and the independent auditor to discuss … significant issues encountered in the course of the audit work, including: … the adequacy of internal controls.  […]
>
> Periodically receive reports from management regarding, and review and discuss the adequacy and effectiveness of, the Company's disclosure controls and procedures.
>
> ***
>
> Periodically conduct separate executive sessions with management and the independent auditor to discuss matters that any of them or the Committee believes could significantly affect the financial statements and should be discussed privately; and review with the independent auditor any audit problems or difficulties and management's response, including any restrictions on the scope of the independent auditor's

activities or access to requested information, or any significant disagreements with management.

\*\*\*

Review with the full Board, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor, and the performance of the internal audit function, if applicable.

**Human Capital Management and Compensation Committee Charter**

46. The Company maintains a Human Capital Management and Compensation Committee Charter. This Charter states:

The Committee shall review the Company's employee compensation policies and practices at least annually to assess the adequacy in promoting the long-term interests of the Company and its stockholders and to further assess whether such compensation policies and practices create risks that are reasonably likely to have a material adverse effect on the Company.

\*\*\*

With respect to "executive officers" (as defined in Rule 3b-7 under the Exchange Act) and "officers" (as defined in Rule 16a-1(f) under the Exchange Act) of the Company, other than the Company's CEO (the "Other Executive Officers"), the Committee has authority to determine the amount and form of compensation paid to the Other Executive Officers, and to take such action, and to direct the Company to take such action, as is necessary and advisable to compensate the Other Executive Officers in a manner consistent with its determinations. The Committee, in consultation with the CEO, will review and approve corporate goals and objectives relevant to the Other Executive Officers' compensation at least annually, evaluate the Other Executive Officers' performance in light of such goals and objectives, including the relationship of such compensation to corporate performance, and based on such evaluation determine the level of the Other Executive Officers' compensation and incentive-compensation and equity-based plan awards.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

\*\*\*

The Committee shall have the authority to review and approve any employment, change in control, severance or termination agreement, plan or arrangement to be entered into with the Company's CEO or any Other Executive Officer, which includes the ability to adopt, amend and terminate such agreement, plan or arrangement.

\*\*\*

The Committee shall annually review the potential risk to the Company from its compensation programs and policies, including any incentive plans, and whether such programs and policies incentivize unnecessary and excessive risk taking.

## **THE MISCONDUCT**

**Background**

47.     The Company is a California-based global producer of plant-based meat products, including vegan beef, pork, and poultry. The Company offers products such as the Beyond Burger, Beyond Sausages, Beyond Meatballs, and Beyond Pepperoni. The Company was founded in 2009.

48.     The Company first found success creating small, sample-sized prototypes of its product offerings, and then received immense support from venture capital and celebrity investors. Beyond Meat went public in 2019 as the best-performing Initial Public Offering ("IPO") in nearly two decades, with shares surging more than 163% in the first day of trading.

49.     Following the success of its IPO, the Company announced it entered numerous high-profile partnerships with prominent foodservice brands including Starbucks, McDonalds, KFC, Pizza Hut, and Taco Bell.  According to a Company spokesperson, when pitching to these foodservice brands, the Company would "show foodservice customers prototypes to illustrate the art of the possible." Beyond

Meat made assurances to investors that all new products are subject to Beyond Meat's "extensive" testing programs, to ensure not only the quality and fidelity of its products, but also that the products are "qualified through trial to ensure manufacturability."

## FALSE AND MISLEADING STATEMENTS

*May 5, 2020 Conference Call*

50.     On May 5, 2002, the Company held its first quarter 2020 earnings conference call with analysts and shareholders.  During that call, the Company presented several new and expanded partnerships, including a limited product test with McDonald's in Canada that ran from January to April 2020.

51.     During the call, when responding to a question raised as to why the test with McDonald's in Canada ended in April without a widespread product launch, Defendant Brown stated: "for no negative reason at all…[W]e feel very good about our relationship with McDonald's and what's going to be happening both there and potentially elsewhere."

52.     When pushed to explain further why the test ended instead of expanding, Defendant Brown stated: "I can assure you there's no issue with McDonald's" and "there's been no change in information since we began this test and got good results in the beginning and got good results at the end."

*June 10, 2020 William Blain Growth Stock Conference*

53.     On June 10, 2020, the Company was present at the William Blair Growth Stock Conference with Defendant Brown as the Company's representative. While at the conference, Defendant Brown was asked for an update on the McDonald's test and potential launch.  In response, Defendant Brown stated that "we had a very positive test with them… I remain very optimistic about our business in foodservice."  Defendant Brown also touted recent tests with Pizza Hut, Taco Bell, and KFC, stating "it was a terrific launch" and "the tests are going well, went

well." Defendant Brown also stated: "our goal is to . . . provide the benefits from a nutritional perspective of meat to the consumer. So you get taste right, you get nutrition right, so you're providing superior nutritional value proposition, and then you drop price below animal protein."

***November 9, 2020 Conference Call***

54.    On November 9, 2020, the Company held its third quarter 2020 earnings conference call with analysts and shareholders.  During that call, analysts asked Defendant Brown for an update on the Company's foodservice partnerships. Defendant Brown claimed that testing remained ongoing with foodservice providers, including Pizza Hut and Taco Bell.  Further, Defendants Brown and Nelson each blamed Covid-19 for any delay in full-scale product launches, with Brown claiming "there's [] testing going on, but I think folks are waiting for resumption of full economic activity before they start to really add things to their menu."

***March 1, 2021 Form 10-K***

55.    On March 1, 2021, the Company filed its 2020 Form 10-K with the SEC for the fiscal year ended December 31, 2020.  Defendants Brown, Nelson, Goldman, Lane, Segal, and Waller signed the 2020 Form 10-K. The 2020 Form 10-K stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and that "[f]lavors are extensively tested prior to introduction to ensure finished product attributes such as taste, texture, aroma, and appearance are not negatively impacted."

56.    The statements in ¶¶ 50-55 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  The identified statements failed to disclose, *inter alia*, that: (i) the Company was unable to meet the scale specified by its partners due to issues with scaling production; (ii) delays in decision making and misalignment created production delays; (iii) the Company misrepresented the strength of its partnerships;

and (iv) the Company failed to maintain adequate internal controls.  As a result of the foregoing, the Company's public statements about its business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

***2021 Proxy Statement***

57.     On April 9, 2021, the Company filed its 2021 Proxy Statement. Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller solicited the Proxy Statement pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.

58.     The 2021 Proxy Statement was false and misleading because the Company's Code of Conduct was not followed, as evidenced by the numerous false and misleading statements and/or omissions alleged herein, and the Individual Defendants failures to maintain adequate internal control and report violations of the Code of Conduct.

59.     The 2021 Proxy Statement called for shareholders' approval of: (i) the election of three Class II directors to serve until the Company's 2024 annual meeting of stockholders and until their successors are duly elected and qualified; (ii) ratification of the appointment of Deloitte & Touche LLP as its independent registered public accounting firm for the year ending December 31, 2021; and (iii) advisory (non-binding) vote on the frequency of future stockholder advisory votes to approve the compensation paid to the company's named executive officers.

60.     The Individual Defendants caused the 2021 Proxy statement to be false and misleading because they failed to disclose material facts necessary to make the statements made not false and misleading.  The Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (i) the Company was unable to meet the scale specified by the Company's partners due to

issues with scaling production; (ii) delayed decision making and misalignment created production delays; (iii) the Company misrepresented the strength of its partnerships; and (iv) the Company failed to maintain adequate internal controls.

61. As a result of the foregoing, the Company's public statements and omissions were materially false and misleading at all relevant times.

62. As a result of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller soliciting the 2021 Proxy Statement, Company shareholders voted for, *inter alia*, the re-election of Board members who were violating their fiduciary duties, thereby enabling the Individual Defendants to perpetuate the misconduct.

### THE TRUTH BEGINS TO EMERGE WHILE
### FALSE AND MISLEADING STATEMENTS CONTINUE

63. On October 22, 2021, the Company announced a reduction to its third quarter net revenues outlook from between $120 million and $140 million to just $106 million, a decline of 12% to 25%. As part of its announcement, the Company also revealed that the Company's expenses were continuing to rise.

64. On this news, the price of the Company's stock declined by $12.82 per share, or 12%, from a closing price of $108.62 per share on October 21, 2021, to a closing price of $95.80 per share on October 22, 2021.

65. On November 10, 2021, after market close, the Company announced a $1.8 million inventory write-off, blaming Covid-19 and costs of product repackaging.

66. On this news, the price of the Company's stock declined by $12.55 per share, or nearly 13%, from a closing price of $94.48 per share on November 10, 2021, to a closing price of $81.93 per share on November 11, 2021.

*November 10, 2021 Conference Call*

67. However, the Individual Defendants continued to assure shareholders of the Company's manufacturing capabilities and the strength of its partnerships. For

instance, during the November 10, 2021 earnings conference call with analysts and shareholders, Defendant Brown continued to attribute the Company's poor financial results and expiring inventory to Covid-19, stating: "there's just unusual consumer behavior . . . whether it's people because of the Delta variant spending less time in the retail markets, being less open to trial in the absence of sampling programs." Defendant Brown also stated that the Company "overcame numerous technical challenges" in its partnership with Pizza Hut to provide Beyond Pepperoni.

68.    The statements above were materially false and misleading because the Company was unable to manufacture its products at the scale specified by its partners.  In short, the Company amassed inventory that it was unable to sell.

69.    On November 17, 2021, *Bloomberg* published an article which highlighted the delays in product roll out and the execution challenges the Company was facing.  That article, citing five former Beyond Meat employees, made clear the Company's ongoing scaling problems and how those problems were tarnishing the Company's relationships with potential partners.

**Bloomberg and Yahoo! Finance Articles**

70.    On December 9, 2021, after market close, *Bloomberg* reported that Taco Bell had cancelled a planned test of Beyond Carne Asada due to ongoing quality concerns.  On December 10, 2021, Yahoo! Finance, also reported that Taco Bell had cancelled the planned test. Both articles discuss how Taco Bell was dissatisfied with the quality of the Company's samples. According to those reports, this cancellation was further evidence of ongoing problems the Company faced in bringing its products to market at scale.

71.    On this news, the price of the Company's stock dropped by $5.58 per share, or nearly 8%, from a closing price of $70.09 per share on December 9, 2021, to a closing price of $64.51 per share on December 10, 2021.

*February 23, 2022 Conference Call*

72.     Following the media reports, Defendants continued to assure shareholders that the Company's product testing was going well.  For example, on February 23, 2022, the Company held its fourth quarter 2021 earnings conference call with analysts and shareholders.  On that call, Defendant Brown stated: "With the resumption of our broader sampling program, this period of delay appears to be coming to an end, and several products are in various stages of market entry or expansion."

*March 2, 2022 Form 10-K*

73.     On March 2, 2022, the Company filed its 2021 Form 10-K with the SEC for the fiscal year ended December 31, 2021. The 2021 Form 10-K was signed by Defendants Brown, Nelson, Goldman, Lane, Segal, and Waller.  The 2021 Form 10-K again stated that "ingredients in our flavors are qualified through trials to ensure manufacturability" and "[f]lavors are extensively tested prior to introduction to ensure finished product attributes such as taste, texture, aroma, and appearance are not negatively impacted."

74.     The statements in paragraphs ¶¶ 67, 69, 72, and 73 were materially false and misleading. Beyond Meat was unable to manufacture its products at the scale specified by its partners. Furthermore, the Company suffered from widespread scaling issues, particularly with misalignment and delayed decision-making, which led to corresponding production delays. The scaling issues were exacerbated by Beyond Meat's disjointed production lines. These problems led to high prices of product that the Company's partners balked at.

*2022 Proxy Statement*

75.     On April 12, 2022, the Company filed the 2022 Proxy Statement with the SEC pursuant to Section 14(a) of the Exchange Act solicited on behalf of

Defendant Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller and which contained material misstatements and omissions.

76.     The 2022 Proxy Statement was false and misleading because as evidenced by the numerous false and misleading statements and/or omissions alleged herein, and the Individual Defendants' failures to report violations of the Code of Conduct.

77.     The 2022 Proxy Statement called for the shareholders' approval of: (i) the election of three Class III directors to serve until the Company's 2025 annual meeting of stockholders and until their successors are duly elected and qualified; (ii) ratification of the appointment of Deloitte & Touche LLP as the Company's independent registered public accounting firm for the year ending December 31, 2022; and (iii) advisory (non-binding) vote to approve the compensation of the Company's named executive officers.

78.     The 2022 Proxy Statement failed to disclose the same material information identified in ¶ 60. As a result of the foregoing, the Company's public statements and omissions were materially false and misleading at all relevant times.

79.     As a result of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller soliciting the 2022 Proxy Statement, shareholders voted to, *inter alia*, the re-election of Board members who were violating their fiduciary duties, thereby enabling the Individual Defendants to perpetuate the misconduct.

## **THE TRUTH EMERGES**

80.     On October 14, 2022, before market open, the Company announced the departure of several of its top executives, including the COO (Doug Ramsey), CGO (Deanna Jurgens), and CFO (Defendant Hardin).

81.     On this news, the price of the Company's stock dropped by $1.43 per share, or over 9.6%, from a closing price of $14.78 per share on October 13, 2022, to a closing price of $13.35 per share on October 14, 2022.

## DAMAGES TO THE COMPANY

82.     As a direct and proximate result of the Individual Defendants' conduct, the Company has lost and expended, and will lose and expend, many millions of dollars.

83.     Such expenditures include, but are not limited to, legal fees associated with the Securities Class Action filed against, the Company, its Founder and CEO, its former CFO (Nelson), and its former CFO (Hardin), and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

84.     Such losses include, but are not limited to, excessive compensation and benefits paid to the Individual Defendants, including bonuses tied to the Company's attainment of certain objectives and benefits paid to the Individual Defendants who breached their fiduciary duties to the Company.

85.     As a direct and proximate result of the Individual Defendants' conduct, the Company has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and the Individual Defendants' false statements and omissions and the Individual Defendants' breaches of fiduciary duties, unjust enrichment, and violations of the Exchange Act.

## DERIVATIVE ALLEGATIONS

86.     Plaintiff brings this action derivatively and for the benefit of the Company to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of the Company, unjust enrichment, gross mismanagement, and violations of the Exchange Act.

87.     The Company is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

88.    Plaintiff is, and has continuously been at all relevant times, shareholders of the Company.  Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights, and, to that end, have retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

89.    Plaintiff incorporates by reference and re-allege each and every allegation stated above as if fully set forth herein.

90.    A pre-suit demand on the Board is futile and, therefore, excused.  At the time of filing of this action, the Board consists of Defendants Brown, Goldman, Grimes, Lane, Pant, Segal, and Waller (collectively, the "Director Defendants"), along with non-party directors Colleen Jay ("Jay"), and C. James Koch ("Koch"). Plaintiff need only to allege demand futility as to five (5) of the nine (9) Directors that were on the Board at the time this complaint is filed.

91.    Demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly, which caused the Company to make false and misleading statements and omissions of material fact. These actions render the Director Defendants unable to impartially investigate the charges and decide whether to pursue an action against themselves and the other perpetrators of this scheme.

**Defendant Brown**

92.    Demand on Defendant Brown is also futile for the following reasons below.  Defendant Brown is the founder of the Company and has served as its President and CEO since 2009.  As the Company admits, Defendant Brown is a non-independent director.  The Company provides Defendant Brown with his principal occupation, and he receives excessive compensation, including $8,010,451 during

fiscal year 2019. Defendant Brown was responsible for all of the false and misleading statements and omissions that were made in the 2020 Proxy Statement, which he solicited as a member of the Board.  Furthermore, Defendant Brown signed the 2020 10-K, and 2021 Form 10-Ks, which contained false and misleading statements and/or omissions.  Defendant Brown also solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and omissions and led to him being re-elected as a member of the Board.  Moreover, Defendant Brown is a defendant in the Securities Class Action.

93.    Defendant Brown breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Goldman**

94.    Demand on Defendant Goldman is futile for the following reasons below.  Defendant Goldman serves as Chairman of the Board and has served as a Company director since February 2013 and Executive Chair from February 2013 to February 2020.  Defendant Goldman has received and continues to receive compensation for his role as a director. Defendant Goldman also made two insider sales receiving approximately $24.1 million in proceeds.  Defendant Goldman also signed the 2020 Form 10-K, and 2021 Form 10-K containing false and misleading statements and/or omissions. Furthermore, Defendant Goldman solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and/or omissions.

95.    For these reasons, Defendant Goldman breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Grimes**

96.     Demand on Defendant Grimes is futile for the following reasons below. Director Grimes has served as a director since May 2021, and a member of the Nominating and Corporate Governance Committee. Defendant Grimes has received and continues to receive compensation for her role as a director. As a Board member, Defendant Grimes conducted little oversight of the Company's false and misleading statements and participated in the scheme to make false and misleading statements and consciously disregarded her duties to monitor such controls over reporting and engagement in the schemes.  Defendant Grimes also signed the 2021 Form 10-K containing false and misleading statements and/or omissions. Further, Defendant Grimes solicited the 2021 and 2022 Proxy Statements, which contained false and misleading statements and omissions, and led to her re-election as a member of the Board.

97.     For these reasons, Defendant Grimes breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Lane**

98.     Demand on Defendant Lane is futile for the following reasons below. Defendant Lane has served as a director since February 2015 and serves as a member of the Human Capital Management and Compensation Committee.  Defendant Lane has received and continues to receive compensation for his role as a director as described herein. Defendant Lane also made two insider sales receiving approximately $10.5 million in proceeds.  Further, Defendant Lane signed the 2020 Form 10-K, and 2021 Form 10-K which contained false and misleading statements and/or omissions. As a director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor

such controls over reporting and engagement in schemes.  Defendant Lane also solicited the 2021 and 2022 Proxy Statements that contained false and misleading statements and omissions and led to him being re-elected as a member of the Board.

99.    For these reasons, Defendant Lane breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Pant**

100.    Demand on Defendant Pant is futile for the following reasons below. Defendant Pant has received and continues to receive compensation for his role as director as described herein. As a director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded his duties to monitor such controls over reporting and engagements in the schemes. Defendant Pant also signed the 2021 Form 10-K containing false and misleading statements and/or omissions.  Defendant Pant also solicited the 2021 Proxy Statement, which contained false and misleading statements and omissions, and led to his re-election as a member of the Board.

101.    For these reasons, Defendant Pant breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Segal**

102.    Demand on Defendant Segal is futile for the following reasons below. Defendant Segal has served as a director since November 2018 and serves as a member of the Audit Committee. Defendant Segal has received and continues to receive compensation for his role as director.  As a director, he conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded

his duties to monitor such controls over reporting and engagement in the schemes. Defendant Segal also signed the 2020 Form 10-K and 2021 Form 10-K, which contained false and misleading statements and/or omissions.  Defendant Segal also solicited the 2021 Proxy Statement, which contained false and misleading statements and omission, and led to his re-election as a member of the Board.

103.   For these reasons, Defendant Segal breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Waller**

104.   Demand on Defendant Waller is futile for the following reasons below. Defendant Waller has served as a director since November 2018 and serves as the Chair of Audit Committee and as a member of the Human Capital Management and Compensation Committee.  Defendant Waller received and continues to receive compensation for her role as a director. As a director, she conducted little, if any, oversight of the Company's false and misleading statements; and participated in the scheme to make false and misleading statements and consciously disregarded her duties to monitor such control over reporting and engagement in the schemes. Defendant Waller also signed the 2020 Form 10-K, and 2021 Form 10-K which contained false and misleading statements and/or omissions.  Defendant Waller also solicited the 2021 and 2022 Proxy Statements which contained false and misleading statements and/or omissions.

105.   For these reasons, Defendant Waller breached her fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendants Segal and Waller**

106.   Defendants-Director Segal and Waller served on the Company's Audit Committee during the Relevant Period.   Pursuant to the Company's Audit

Committee Charter, Defendants Segal and Waller were responsible for overseeing the integrity of the Company's compliance with legal and regulatory requirements, matters implicating ethical concerns, and the adequacy of the Company's internal controls. Defendants Segal and Waller failed to ensure the integrity of the Company's internal controls, as they are charged to do under the Audit Committee Charter, which, among other things, allowed the Company to file filings with the SEC that made false and misleading statements.

107. Thus, Defendants Segal and Waller breached their fiduciary duties, are not disinterested, and demand is excused as to them.

## FIRST CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

108. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

109. Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Beyond Meat's business and affairs.

110. Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

111. The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of the Company.

112. In breach of their fiduciary duties, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (i) the Company was unable to meet the scale specified by the Company's partners due

to issues with scaling production; (ii) delayed decision making and misalignment created production delays; (iii) the Company misrepresented the strength of its partnerships; and (iv) the Company failed to maintain adequate internal control.

113.   In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

114.   Plaintiff, on behalf of the Company, has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Unjust Enrichment

115.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

116.   By their wrongful acts, violations of law, and/or false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Beyond Meat.

117.   The Individual Defendants either benefitted financially from the improper conduct and they received unjustly lucrative bonuses that were tied to the misconduct alleged herein, or received bonuses, stock options, or similar compensation from Beyond Meat that were unjust in light of the Individual Defendants' bad faith conduct.

118.   Plaintiff, as a shareholder and representative of the Company, seeks restitution from the Individual Defendants and seek an order from this Court disgorging all profits—including from benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

119.   Plaintiff, on behalf of the Company, has no adequate remedy at law.

**THIRD CLAIM**

**Against Individual Defendants for Gross Mismanagement**

120. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

121. By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Beyond Meat in a manner consistent with the operations of a publicly held corporation.

122. As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Beyond Meat has sustained and will continue to sustain significant damages.

123. As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

124. Plaintiff on behalf of Beyond Meat has no adequate remedy at law.

**FOURTH CLAIM**

**Against Defendants Brown, Nelson, Goldman, Grimes, Lane, Pant, Segal and Waller for Violations of Section 14(a) of the Exchange Act**

125. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

126. The claims made pursuant to Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), that are alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of Defendants Brown, Nelson, Goldman, Grimes, Lane, Pant, Segal and Waller. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of reliance upon any allegation of, or reference

to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

127.   Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

128.   Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

129.   Under the direction and watch of the Directors, the 2021, and 2022 Proxy Statements failed to disclose, *inter alia*, that: (i) the Company has been unable to meet the scale specified by its partners due to issues with scaling production; (ii) delayed decision making and misalignment created production delays; (iii) the Company misrepresented the strength of its partnerships; and (iv) the Company failed to maintain adequate internal controls.

130.   The 2021, and 2022 Proxy Statements were false and misleading when it discussed the Company's Code of Conduct, due to the Individual Defendants' failure to abide by the Code of Conduct, and their engagement in or the tolerance of the false and misleading statements and/or omissions of material fact made by the Company.

131.   Defendants Brown, Nelson, Hardin Goldman, Lane, and Waller knew or should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2021, and 2022 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2021, and 2022 Proxy Statements, including, but not limited to, election of directors and the ratification of an independent auditor.

132.   The false and misleading elements of the 2021 Proxy Statements led to the re-election of Defendants Brown, and Lane, which allowed them to continue engaging in and/or permitting the false statements. and to continue breaching their fiduciary duties to the Company.

133.   The false and misleading elements of the 2022 Proxy Statement led to the reelection of Defendants Grimes, Pant, and Segal, which allowed them to continue engaging in and/or permitting the false statements and to continue breaching their fiduciary duties.

134.   Plaintiff, on behalf of the Company, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)   Declaring that Plaintiff may maintain this action on behalf of the Company, and that Plaintiff is an adequate representative of the Company;

(b)   Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to the Company;

(c)   Determining and awarding to the Company the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants with pre-judgment and post-judgment interest thereon:

(d)     Directing the Company and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies.

(f)     Awarding the Company restitution from the Individual Defendants, and each of them;

(g)     Awarding Plaintiff's the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(h)     Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: July 27, 2023            **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By, _____

BETSY C. MANIFOLD

BETSY C. MANIFOLD (182450)
FERDEZA ZEKIRI (335507)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
zekiri@whafh.com

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**
501 Fifth Avenue, 19th Fl.
New York, NY 10017
Tel:   (212) 983-1300
Fax:   (212) 983-0383
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

---

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

35

## VERIFICATION

I, KIMBERLY BRINK, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Beyond Meat, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Beyond Meat, Inc. common stock at all relevant times.

KIMBERLY BRINK